**UNITED STATES of America,**
**Plaintiff,**

v.

**CHICAGO EXPRESS, INC., Defendant.**

**Cr. No. 18041.**

United States District Court
E. D. Illinois.

March 30, 1959.

Clifford M. Raemer, U. S. Atty., Eastern Dist. of Illinois, James B. Moses, Asst. U. S. Atty., Eastern Dist. of Illinois, East St. Louis, Ill., for plaintiff.

Paul W. Lashly, St. Louis, Mo., for defendant.

JUERGENS, District Judge.

An inspector of the Interstate Commerce Commission stopped defendant's tractor-trailer unit on Illinois Route 3 about ¾ mile north of Monsanto Chemical Company plant, after the vehicle had been loaded with 33,210 pounds of para-nitroanaline solid, a dangerous poison, a product of Monsanto. The truck was not placarded with warning signs as required by valid regulation of the Interstate Commerce Commission (49 CFR 77.823).

A jury, on June 13, 1955, found the defendant guilty on Counts 1 and 2 of the information. The Circuit Court of Appeals of the Seventh Circuit (235 F.2d 785) reversed and remanded for a new trial because of an erroneous instruction.

A second trial to a jury was had on July 8, 9, and 10, 1957, resulting in a verdict of guilty as to Count 1 only.

The defendant in its motion sets forth 11 reasons why a new trial should be granted.

In its Memorandum of Law in support of its motion for new trial defendant argues:

(1) The United States failed to make a case against the defendant;

(2) The instructions given to the jury at the request of the government erroneously declared the law; and

(3) Failure to give the complete instruction requested by defendant constituted error.

As to (1), namely, that the United States failed to make a case against the defendant, it says that the Government must prove the three essential elements of the crime charged, that is:

1) That the defendant had actual knowledge of the nature of the load which it was transporting;

2) That the defendant had actual knowledge of the regulation it is accused of violating; and

3) That the defendant had a specific intent to violate the regulation.

If the government has proved 1) and 2), then 3) will follow as a natural consequence. If the defendant had actual knowledge of the nature of the load it was transporting and also had actual knowledge of the regulation it is accused of violating and then proceeded to violate the regulation, it knowingly did what it was not supposed to do and, therefore, intended to do what it was not supposed to do and, therefore, had a specific intent to violate the regulation.

The defendant had actual knowledge of the nature of the load which it was transporting because its driver Hart saw the labels (Government's Exhibit 2) carrying the words, in large red letters, "Warning—Poison" and having the standard skull and crossbones insignia affixed or applied to each of the drums when he counted them on his truck.

Defendant had actual knowledge of the nature of the load which it was trans-porting because its agent Hart signed the bill of lading (Government's Exhibit 2), which had "Class 'B' Poison Label Applied" in red letters ⅜ of an inch high stamped above his signature.

The defendant had actual knowledge of the regulation of the Interstate Commerce Commission it is accused of violating because it stipulated at the trial as follows:

"It is stipulated by and between the parties hereto that paranitroanaline solid, a Class B poisonous substance, was so classified by the Interstate Commerce Commission pursuant to an order and that such classification was adopted and reproduced in a tariff filed with the Interstate Commerce Commission by defendant, Chicago Express, Incorporated, which tariff adopted and reproduced the regulations requiring placards on both sides and the rear of the trailer carrying such substance reading 'Dangerous', in letters not less than three inches high on a contrasting background."

The government has proved 1) and 2) above and the defendant having violated the regulation, after knowledge, intended to do what it did do. No one can look into the mind of an individual—much less a corporation, since it has no mind— to see what an individual intended. Intent must be determined by the acts and actions of the individual.

Driver Hart saw the labels (Government's Exhibit 1) and signed the bill of lading with the "Class 'B' Poison Label Applied" stamped above his signature (Government's Exhibit 2). The defendant had actual knowledge of the regulation as evidenced by the stipulation. Consequently, knowing what it did and then doing what it did, it knowingly violated the regulation and intended to violate the regulation.

Having had actual knowledge of the nature of the load which it was transporting and having had actual knowledge of the regulation it is accused of violat-

ing, it had a specific intent to violate the law when it transported the paranitroanaline from Monsanto Chemical Company over Illinois Route 3 to St. Louis, Missouri.

■■ The statute punishes only those who knowingly violate the regulation. St. Johnsbury Trucking Co. v. United States, 1 Cir., 220 F.2d 393 (and the cases therein cited). From the testimony the Court finds that the defendant knowingly violated the regulation and the jury verdict was correct.

Defendant next argues that the instructions given to the jury at the request of the government erroneously declared the law and that the failure to give the complete instruction requested by the defendant constituted error. The instructions, when taken as a whole, fairly and impartially presented the matter to the jury. It is possible when taking a sentence out of context or a portion of an instruction out of context to make it look bad and very prejudicial to one party or another, but when read in connection with all other instructions is fair to both sides.

■ Refused portion of defendant's instruction would require every employee of a corporation to have actual knowledge of everything that goes on in the corporation at all times. This is impossible. The rate clerk knows about rates, but he would know nothing about the insurance program of a corporation. The tariff clerk would know about the tariffs, but he would know nothing about the maintenance program of a corporation's rolling stock. But those facts don't mean that the corporation isn't chargeable with knowledge of facts known by any one of its agents, servants or employees.

The fact that all employees do not know about the rate schedule, the tariffs, the maintenance program, or the insurance program does not mean that the corporation is not chargeable with knowledge.

The defendant's motion for a new trial will be denied.